KATHLEEN ANN KEOUGH, A.J., DISSENTING:
 

 {¶ 84} Respectfully, I dissent.
 

 {¶ 85} First, Johnson has not raised any assignment of error on appeal regarding the trial court's dismissal of Count III of his amended complaint, which seeks specific performance and injunctive relief against U.S. Title and Chicago Title. Therefore, I would hold that Johnson has waived this claim.
 

 {¶ 86} With respect to Chicago Title, I would hold that summary judgment was properly granted because Johnson failed to give Chicago Title notice of his claim. The Owner's Policy mandates a specific notice procedure that requires that "any notice of claim * * * must be given to the Company at the address shown in Section 18 of the Conditions." Section 18 provides that "any notice of claim * * * must be given to the Company at Chicago Title Insurance Company, Attn: Claims Depart, P.O. Box 45023, Jacksonville, Florida 32232-5023."
 

 {¶ 87} In
 
 Kincaid v. Erie Ins. Co.
 
 ,
 
 128 Ohio St.3d 322
 
 ,
 
 2010-Ohio-6036
 
 ,
 
 944 N.E.2d 207
 
 , the Ohio Supreme Court held that an insured does not have standing to maintain an action against his insurance company for coverage of an alleged loss when he did not file a claim for the loss or give any notice to the insurer of the loss before filing the complaint. Despite Johnson's assertions otherwise, his emails to U.S. Title were not notice to Chicago Title, as required by the Owner's Policy. There is no genuine issue of material fact that the first notice Chicago Title had of the claims was when Johnson filed the amended complaint adding Chicago Title as a defendant. Indeed, Johnson admits that he gave no notice to Chicago Title prior to filing his amended complaint. Based on
 
 Kincaid
 
 and the notice provisions of the Policy, Johnson lacks standing to bring suit; his claims against Chicago Title fail; and summary judgment in favor of Chicago Title was properly granted.
 

 {¶ 88} With respect to U.S. Title, Johnson asserts claims for breach of contract, negligence, breach of fiduciary duty, and bad faith (Counts I, IV, V, and VI respectively of the amended complaint). I would
 hold that the trial court properly granted summary judgment to U.S. Title on all of these claims.
 

 {¶ 89} Johnson contends that the closing instructions were either an express or implied-in-fact contract between U.S. Title, himself, and KeyBank. Johnson claims that U.S. Title breached this alleged contract by failing to (1) obtain his contractor's signature on the construction loan agreement; (2) advise KeyBank that its choice of a closed-end mortgage was wrong; and (3) secure title insurance with exclusions for any liens filed against his property after the closing date of the agreement.
 

 {¶ 90} But the evidence is clear that Johnson never submitted any written closing instructions to U.S. Title. Indeed, it is undisputed that the only written closing instructions were issued by KeyBank to U.S. Title. The evidence is also clear that the closing instructions issued by KeyBank did not contemplate losses incurred by Johnson. In fact, the instructions specifically stated that U.S. Title "will be made liable for losses incurred
 
 by the Lender
 
 as a result of the agent closing a loan with knowledge that errors were contained in any documents or instructions." (Emphasis added.) The instructions did not require coverage for the alleged losses Johnson now claims, and therefore, the trial court did not err in granting summary judgment on this claim.
 

 {¶ 91} The majority concludes that although Johnson is not a party to the contract created by the closing instructions, he has standing to pursue his breach of contract claim as a third-party beneficiary of the closing instructions. The problem with this analysis is two-fold. First, Johnson never raised his third-party beneficiary claim in the trial court and thus has waived it for purposes of appeal.
 

 {¶ 92} Moreover, even assuming Johnson is a third-party beneficiary of the closing instructions, his breach of contract claim still fails. Contrary to Johnson's assertions otherwise, there is simply no evidence in the record that KeyBank ever asked either U.S. Title or Chicago Title to insure over unreleased mechanic's liens to allow KeyBank to make further construction disbursements. Indeed, the plain language of the construction loan agreement makes clear KeyBank's intention to seek title endorsements before making disbursements. The agreement specifically provides that KeyBank could request title endorsements and refuse to disburse further construction funds to Johnson if unreleased mechanic's liens on the property were discovered.
 

 {¶ 93} Further, the record reflects that KeyBank informed Johnson that the transaction was closed correctly, and that KeyBank was not obligated to disburse more construction funds to Johnson in light of the mechanic's liens. Thus, despite Johnson's assertion that the mechanic's lien exclusion should not have been included in the title policy, it is apparent that KeyBank got exactly what it wanted at closing. Logically then, as a third-party beneficiary of the closing instructions, Johnson did too. Consequently, there was no breach of the closing instructions.
 

 {¶ 94} Johnson also cannot demonstrate a breach of contract under the Owner's Policy. Under the exclusions from coverage, Johnson is not covered for liens that attached or were created after the date of the policy. Even Johnson's expert agreed that there is no coverage under the Owner's Policy for liens filed after the date of the policy. The policy is dated June 2, 2010; the mechanic's liens were recorded well after the date of the policy.
 

 {¶ 95} Likewise, Johnson cannot prove breach of the closing protection coverage. As the trial court correctly recognized,
 Johnson's closing protection coverage excludes coverage for "matters created, suffered, assumed or agreed to by you and/or your agents or employees." The mechanic's liens arose when Johnson refused to pay his contractor. Thus, it is apparent that Johnson's claims arose out of a situation he created, and therefore, the "created, suffered, assumed or agreed to" exclusion applies.
 

 {¶ 96} Johnson's negligence claim against U.S. Title also fails. It is well established that there is no cause of action for negligence where the alleged duty arises out of a contract.
 
 Corporex Dev. & Constr. Mgmt. v. Shook, Inc.
 
 ,
 
 106 Ohio St.3d 412
 
 ,
 
 2005-Ohio-5409
 
 ,
 
 835 N.E.2d 701
 
 . "Where the duty allegedly breached by the defendant is one that arises out of a contract, independent of any duty imposed by law, the cause of action is one of contract."
 
 Nichols v. Chicago Title Ins. Co.
 
 ,
 
 107 Ohio App.3d 684
 
 , 697,
 
 669 N.E.2d 323
 
 (8th Dist. 1995).
 

 {¶ 97} U.S. Title's duties to Johnson are defined by contract, not tort. The majority apparently agrees, finding that Johnson is a third-party beneficiary of the closing instructions. Nevertheless, the majority improperly holds that Johnson's negligence claim can proceed upon remand.
 

 {¶ 98} I would find that Johnson's breach of fiduciary duty claim against U.S. Title also fails. Johnson is not a party to the Lender's Policy and cannot create a duty owed to him by U.S. Title based on contractual terms between U.S. Title and KeyBank. Furthermore, even assuming that U.S. Title, as escrow agent, was an agent of both KeyBank and Johnson, Johnson's breach of fiduciary claim still fails. It is undisputed that Johnson never provided any written instructions to U.S. Title. Although Johnson asserts that his attorney called U.S. Title and stated that Johnson wanted his coverage to be "no less comprehensive than that of KeyBank," in light of KeyBank's representation that the transaction closed appropriately, there is no issue of fact that U.S. Title followed KeyBank's closing instructions. Thus, Johnson cannot demonstrate that U.S. Title breached its fiduciary duty to him in carrying out KeyBank's written closing instructions.
 

 {¶ 99} Finally, I would find that Johnson's bad faith claim against U.S. Title fails. Ohio law is clear that a purported breach of a covenant of good faith and fair dealing is not an independent tort claim upon which liability can attach. Good faith is part of a contract claim and does not stand alone.
 
 Pappas v. Ippolito
 
 ,
 
 177 Ohio App.3d 625
 
 ,
 
 2008-Ohio-3976
 
 ,
 
 895 N.E.2d 610
 
 (8th Dist.). Nor is U.S. Title an insurer such that an implied covenant of good faith and fair dealing should be attributed to its relationship with Johnson.
 
 See
 

 id.
 
 at ¶ 57. Accordingly, the trial court properly granted summary judgment on Johnson's bad faith claim. By finding Johnson to be a third-party beneficiary of the closing instructions, the majority implicitly finds that his claim arises in contract. Accordingly, it errs in holding that his bad faith claim against the defendants can proceed upon remand.
 

 {¶ 100} Because there are no genuine issues of material fact regarding any of Johnson's claims, I would affirm the trial court's ruling granting summary judgment to U.S. Title and Chicago Title.